# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| 1) UNITED STATES OF AMERICA,  )<br>  )<br>         **Plaintiff,**          )<br>  )<br>         -vs-          )<br>  )<br>2) $165,354.00 IN UNITED STATES   )<br>    CURRENCY,        )<br>  )<br>         **Defendant.**         ) | No. CIV-25-_____ |

## **VERIFIED COMPLAINT FOR FORFEITURE *IN REM***

The United States of America brings this complaint and alleges upon information and belief, in accordance with Supplemental Rule G(2) of the Federal Rules of Civil Procedure, as follows:

## NATURE OF THE ACTION

1. This is a civil action *in rem* to forfeit to the United States of America, pursuant to 21 U.S.C. § 881(a)(6), approximately $165,354.00 ("**Defendant Currency**") seized from Xin Chen ("Chen") at the Will Rogers World Airport in Oklahoma City, Oklahoma.

## JURISDICTION AND VENUE

2. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1345, providing the Court with jurisdiction over all civil actions commenced by the United States, and pursuant to 28 U.S.C. § 1355, which provides the Court with jurisdiction over actions to recover or enforce forfeitures.

3. This Court has *in rem* jurisdiction over **Defendant Currency** because venue properly lies in the Western District of Oklahoma pursuant to 28 U.S.C. § 1395.

4. Venue is proper in the United States District Court for the Western District of Oklahoma, pursuant to 28 U.S.C. § 1395(b) because the **Defendant Currency** was found and seized in this district.

## THE DEFENDANT *IN REM*

5. **Defendant Currency** consists of approximately $165,354.00 in United States currency seized from Chen on July 19, 2024, at the Will Rogers World Airport by law enforcement officers who determined that there was probable cause to believe that **Defendant Currency** constitutes:

   a. money furnished or intended to be furnished by a person in exchange for a controlled substance in violation of the Controlled Substances Act;

   b. proceeds traceable to such an exchange; or

   c. money used or intended to be used to facilitate violation of the Controlled Substances Act,

specifically 21 U.S.C. §§ 846 and 841(a)(1).

6. The funds were taken into custody by Homeland Security Investigations ("HSI") agents and remain in the custody of the United States, within the Western District of Oklahoma.

7. As set forth in Supplemental Rule G(3)(b)(i), the Clerk of Court must issue a warrant to arrest **Defendant Currency** if they are in the Government's possession, custody, or control.

## **BASIS FOR FORFEITURE**

8.  **Defendant Currency** is subject to forfeiture to the United States pursuant to 21 U.S.C. § 881(a)6) because it constitutes:

    a.  money furnished or intended to be furnished by a person in exchange for a controlled substance in violation of the Controlled Substances Act;

    b.  proceeds traceable to such an exchange; or

    c.  money used or intended to be used to facilitate a violation of the Controlled Substances Act.

*See* 21 U.S.C. §§ 846 and 841(a)(1).

## **FACTS**

9.  The facts and circumstances supporting the forfeiture of **Defendant Currency** have been provided by HSI Special Agent Christopher M. Donovan.

10. On July 19, 2024, at approximately 2:00 p.m., Transportation Security Administration ("TSA") agents were conducting security screenings of passengers and carry-on baggage at the Will Rogers World Airport Oklahoma City.

11. During the screening process, TSA agents encountered Chen, who was booked on a flight that afternoon from WRWA to Denver, Colorado.

12. Chen was traveling with a pink Samsonite suitcase ("the suitcase") and a patterned Christian Dior backpack ("the backpack"), which she presented at a security checkpoint indicating an intention to carry both on-board during her flight.



13.     When TSA agents passed the suitcase through screening equipment, they identified an "organic mass" therein.

14.     TSA agents opened the suitcase and upon further examination of the contents, discovered and removed a plastic rectangular case filled with snack food.



15. Inside the case containing the snack food, the agents located a black resealable bag concealed between layers of food items.



16. Agents removed and opened the black resealable bag, within which they located a large sum of United States currency – much of it consisting of $100 bills stacked together into groups of 100, banded into bundles using additional bills folded in half, perpendicular around the stacks.

 

17. When TSA agents first asked Chen about the currency, she claimed that she was not told that the money was in the bag, but as conversation progressed, Chen's story changed and she told them that there was $50,000.00 inside.

18. TSA agents then contacted officers with the Oklahoma City Police Department ("OCPD") assigned to the airport for further investigation and OCPD Master Sergeant ("MSgt.") Jared Elliot and Sergeant ("Sgt.") Brian Wyant arrived at the checkpoint to speak with Chen, who advised them that the money was not hers.

19. Chen claimed that the money belonged to someone named "Angel" but that she did not know how much currency she was carrying.

20. Chen volunteered further that "Angel" attempted to purchase a restaurant in Oklahoma, but then did not "get it."

21. Chen then claimed that "Angel" told her that there was money in the bag, but "not much" and that "Angel" instructed her to transport it to Colorado.

22. When asked where "Angel" was located, Chen first answered "Colorado," before claiming that she was in China "on vacation," then later that she was in China in response to "an emergency."

23. As officers reviewed the stacks of currency and photographed it in front of her, Chen appeared nervous, moving frequently and changing details of her story.

24. When officers asked Chen how she came into possession of the money, she claimed to have been directed by "Angel" to meet with an unidentified person near a grocery store in Oklahoma City who gave her the bag, but Chen claimed not to know the name of the person who gave it to her.

25. Throughout the conversation with the officers, one of Chen's cell phones (a dark blue iPhone) was placed on the counter on top of which the currency was handled, but Chen also possessed a second cell phone (a white Apple iPhone) on which she spoke and appeared to by typing messages at various points during the conversation with the officers.

26. During the interaction, Chen displayed markers of nervousness, specifically frequent movement, looking around, and touching her face and hair.

27. Chen told the officers that she was not employed. and further provided no bank receipts for the currency, nor any evidence to suggest she operates a legitimate money courier or remitter business or holds a license to do so.

28. After the conclusion of the discussion at the checkpoint, Chen was detained at the airport police office, and OCPD MSgt. Eldon Walsh and his state-certified K9 drug detection dog "Juci" ("K9 Juci") arrived there as well.

29. When MSgt. Walsh deployed K9 Juci to conduct a free air sniff of Chen's suitcase and backpack, K9 Juci alerted separately on the suitcase and upon the backpack, indicating the presence of a controlled substance.

30. Individuals who handle controlled substances often transfer traces of the substances to their hands and clothing, and these trace amounts of controlled substances can be spread to other items that they handle, including currency. A positive alert to currency by a certified drug detection dog indicates that the currency had either been handled by someone who had trace amounts of a controlled substance on their hands or that the currency had recently been in close proximity to a controlled substance.

31. HSI agents seized the bags and bulk currency, the suitcase, the backpack, and Chen's dark blue Apple iPhone following the K9 alerts.[1]

32. An Oklahoma County District Court judge issued a state search warrant authorizing law enforcement officers to search Chen's suitcase and backpack, during the execution of which they recovered additional U.S. currency, a second cell phone (the white iPhone observed previously), and a notebook from Chen's backpack.




33. The notebook appears to be a drug ledger containing transactional lists dated as recently as approximately a week prior to the seizure in which line items include product abbreviations, weights, prices per pound, and total payment amounts.




---

[1] Chen placed the white Apple iPhone into her luggage during the interaction with law enforcement. It was inside when agents later executed the search warrant.

34. Law enforcement also obtained warrants authorizing a search of both phones from a judge of the United States District Court for the Western District of Oklahoma.[2]

35. The dark blue Apple iPhone seized from Chen was analyzed pursuant to the search warrant and an extraction report was prepared containing account log-in information associated with Chen indicating that she personally used it to communicate.

36. Within applications on the phone, to include native messaging and Signal, agents located numerous conversations over a period of years demonstrating Chen's personal coordination of drug sales, including content close in time to the seizure of **Defendant Currency**.

37. Chen's conversations include discussion of product specifics and logistical coordination, as well as multiple references to communication with a "farmer" which indicate that she appears to be interacting directly with the source of the marijuana in order to supply her customers.

38. Within the conversations, Chen exchanged photographs of various strains or "flavors" of marijuana, bearing labels including "Cereal Milk," "Black Runtz," "GG4," "Lemon Cherry Gelato," "Oreo Cookie," "Garanimals," "Lava Runtz," "White Truffle," "Ferrari Runtz," and "Purple Ice."

39. These labels appear to correspond to abbreviations in line-item entries within the drug ledger.

---

[2] *See In the Matter of the Search of a White Apple iPhone, Located In Secure Evidence Storage at the HSI Oklahoma City Office,* MJ-24-595-AMG (W.D. Okla.); *see In the Matter of the Search of a Dark Blue Apple iPhone, Located In Secure Evidence Storage at the HSI Oklahoma City Office,* MJ-24-596-AMG (W.D. Okla.).

40. Photographs of the drug ledger seized from Chen were located within the phone extraction as well.

41. Investigators contacted the Oklahoma Bureau of Narcotics ("OBN") to check licensing records to determine if Chen was registered to conduct marijuana-related business during the timeframe of the communications, but OBN records demonstrate Chen was not registered with Oklahoma state authorities to grow, dispense, process, or transport marijuana during the timeframe of the communications.

42. After the seizure, HSI agents transported **Defendant Property** to a Loomis, a cash handling service, for an official count and deposit into the HSI account.

43. The amount of **Defendant Property** located within the suitcase during the initial encounter with Chen was determined to be $139,800.00.

44. The amount of **Defendant Property** located within a wallet inside Chen's backpack during the initial encounter with Chen was determined to be $25,300.00.

45. The amount of **Defendant Property** located loosely within the backpack during the initial encounter with Chen was determined to be $254.00.

46. When **Defendant Property** was later officially tallied using the services of a cash handling service, it was found to be a total of $165,354.00.

47. In spite of taking great effort at the time of the seizure to disclaim **Defendant Currency** and to convince law enforcement that it belonged to another individual, Chen, through her attorney, submitted a claim of ownership to the **Defendant Property** with CBP FP&F to contest its administrative forfeiture on September 16, 2024.

## CONCLUSION

48.     As required by Supplemental Rule G(2)(f), the facts set forth herein support a reasonable belief that the Government will be able to meet its burden of proof at trial. Specifically, probable cause exists to believe that the **Defendant Currency** constitutes

a.  money furnished or intended to be furnished by a person in exchange for a controlled substance in violation of the Controlled Substances Act;

b.  proceeds traceable to such an exchange; or

c.  money used or intended to be used to facilitate a violation of the Controlled Substances Act,

violations of 21 U.S.C. §§ 846 and 841(a)(1) and are therefore subject to forfeiture pursuant to 21 U.S.C. § 881(a)(6).

WHEREFORE, pursuant to Supplemental Rule G, Plaintiff United States of America respectfully requests that process of forfeiture be issued against **Defendant Currency**; that due notice of this action be given to all interested parties to appear and show cause why the forfeiture should not be decreed; that **Defendant Property** be forfeited to the United States for disposition according to law; and that the Court order any such other and further relief as this Court deems proper and just.

Respectfully submitted,

ROBERT J. TROESTER
United States Attorney

s/ Danielle M. Connolly
DANIELLE M. CONNOLLY
Assistant United States Attorney
Oklahoma Bar Number: 33148
210 Park Avenue, Suite 400
Oklahoma City, Oklahoma 73102
Office: (405) 553-8700
danielle.connolly@usdoj.gov

11